## Taylor v. Taylor.

(Decided March 13, 1936).

BECKHAM OVERSTREET for appellant.

S. S. SAMUELS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

The appellee and plaintiff below, William C. Taylor, and the appellant and defendant below, Sarah H. Taylor, are colored people residing in Jefferson county, Ky., and were married in 1910. No children were born of the union, and on June 18, 1934, plaintiff filed this divorce action against defendant. As grounds therefor, he alleged in his petition that they had been separated and living apart for as much as five years last past, and that she had abandoned him without his fault more than one year prior to the filing of the action. The answer of defendant denied the grounds of divorce set forth in the petition, and by counterclaim she sought a divorce a mensa et thoro and alleged grounds therefor which would support a decree of absolute divorce, and which were cruel treatment for a period of not less than six months to such an extent as to indicate a settled aversion to her and to destroy permanently her peace and happiness, and one year's abandonment of her by plaintiff without her fault.

The proof was taken by the commissioner of the court to whom the cause was referred. Embraced in the order of reference was a motion (followed by a rule) that defendant be allowed $90 per month as alimony pendente lite. After proof taken by the commissioner, he recommended that plaintiff had failed to sustain his alleged grounds for absolute divorce, but that defendant had proved the grounds averred by her in her counterclaim, and he recommended that defendant be allowed $50 per month alimony until the further orders of the court, and that she recover her costs, including $100 for her attorney's fees, and on July 18, 1934, that report was "approved and confirmed." On

210 the 14th day of January, 1935 (nothing further having been done in the meantime), defendant filed her affidavit and moved the court for a rule against plaintiff to show cause why he had failed to pay the monthly alimony so allowed—it being $107.50 in arrears. We find no response to that rule, but on the 23d day of January, 1935, the court entered this order: "The court being sufficiently advised, it is ordered that the rule against plaintiff be and it is hereby discharged without prejudice to which the defendant objects and excepts." On the same day the court entered a memorandum on the papers in the cause, saying: "Heard by court this day. Will allow $25 a month alimony for three years in permanent alimony."

On the 20th day of February, 1935, the court entered final judgment in the cause in which nothing was said with reference to plaintiff's petition, nor any disposition made of it; but it was therein adjudged that defendant "is hereby divorced from bed and board with the plaintiff, William C. Taylor, upon her counterclaim herein," and that she recover of plaintiff her costs, "including attorney's fees of $100.00; also the sum of $25.00 per month, until further order of the court, for all of which she may have execution." She has prayed and was granted an appeal from that judgment, and the only questions before us are: (1) The insufficiency of the allowance to defendant; and (2) the complaint made as to the size of the attorney's fee.

It is needless to make a detailed statement of the evidence heard and reported by the commissioner. It failed entirely to show any of the abandonment or separation grounds contained in the petition against defendant, but plaintiff testified as to what he claimed was an annoying and very disturbing disposition on the part of defendant to such an extent as to destroy his peace and happiness, and that in self-defense he was finally compelled to leave her. That testimony was completely refuted by the proof introduced by defendant, not only through her own testimony, but also by that of her neighbors and acquaintances who were more or less familiar with the conjugal relations between the parties. It showed that defendant was a frugal and industrious woman and that her temper was mild and serene, as well as affectionate towards her husband. It also showed that beginning some-

where about 1930 plaintiff became infatuated with another woman by the name of Lela Jackson, whom he visited frequently, according to the proof, mostly at night, and would remain away from home until a late hour, and on some occasions throughout the entire night. Likewise, he would sometimes return home in a very much intoxicated condition.

It is needless to enter into the details of the testimony relating to his lascivious associations with Lela Jackson, since it is indisputably established and not denied by plaintiff that they occurred as testified to by defendant and her witnesses. Naturally, defendant would be inclined to show and exhibit some irritation on account thereof, but she continued to importune plaintiff to desist and resume the happy relations theretofore existing between the two. Neither her objections thereto nor her efforts to bring about a cessation of such unlawful relations by her husband can be considered as any excuse for plaintiff's proven actions in this case.

We have said that the alleged and proven grounds relied on by defendant in her counterclaim would have authorized the granting of an absolute divorce to her, but she did not seek it and was willing to accept a modified divorce with a just and equitable allowance to her during its existence. The proof uncontradictedly is that plaintiff is a mail carrier in the city of Louisville and earns as much as or perhaps slightly more than $170 per month. He has some slight bronchial affliction which, as he testified, caused him to lose upon an average of about one and a half days per month, but there is nothing appearing in the record to show that such affliction is incurable, nor that it has assumed such proportions as to inspire the belief that it will remain permanent. His age does not appear from the record, but defendant is 42 years old, and it is fair to assume that he possibly is in the neighborhood of 45 years of age.

There is no permanently fixed rule by which allowances of alimony may be measured, and our opinions upon the subject vary with the facts of each case. A general rule, to be qualified by the varying facts, is that the wife, when she has no property and is not to blame, and in the absence of any other qualifying facts,

should be allowed in the neighborhood of one-third of the husband's estate from which his source of its payment is derived. A great many cases could be cited in support of that rule, but the question was thoroughly gone into and that general rule approved in the case of Burns v. Burns, 173 Ky. 105, 190 S. W. 683, and in that opinion we cited other cases prior thereto supporting the same rule. A number of subsequent ones could be cited in which the Burns opinion was referred to, and the rule therein stated approved.

In this case the husband is, as we have pointed out, at fault. He is to all intents and purposes at this time in practically normal physical condition, with comparatively 100 per cent. earning power. It is now producing for him, as we have seen, as much as $170, and perhaps a slight amount above that sum. One-third thereof would be $56.33 1-3. His wife has nothing except what she can earn, and his wrongful disturbance of the marital relation is shown by the evidence to have produced with her a nervous condition greatly impairing her earning capacity. Defendant, since the separation, purchased an automobile, but which is not shown to be necessary in discharging his employment, since he stated, in an effort to show his expenses, that he wore out a number of pairs of shoes while serving the government in a pedestrian capacity. It is true that he now claims that he has sold the automobile, but it was shown that he was frequently driving it since that alleged sale and which he attempted to justify by saying that the purchaser of it from him consented that he might do so at any time when the purchaser was not using it. He owes some debts, according to his testimony, but for what they were contracted does not appear, except the deficit from the forecloseure of a mortgage lien on his residence. But whether those debts arose out of his relations with Lela Jackson, or were created for an innocent or worthy purpose on his part, may not be given the effect of excusing him from discharging his legal obligations to his abandoned wife. His obligation to her is just as sacred as it is to any other creditor, and we are not at all convinced but that he can meet the monthly obligations that those debts impose and at the same time discharge his obligation to his wife, and to which she is entitled. We, therefore, con-

clude that the court erred in reducing the monthly allowance recommended by the commissioner from $50 to $25.

We will now briefly consider the question of inadequacy of allowed attorney's fees. The testimony as taken and reported by the commissioner consists of 81 pages. The transcript of the court record which, of course, includes the pleadings, consists of 27 pages, making a total of 108 pages of the entire record brought to this court. The property of plaintiff, who was ordered to pay the attorney's fees, is, as we have seen, almost exclusively his earning capacity. The amount that he will pay to his wife in monthly alimony installments may be modified to conform to the reduction in his earning capacity, if any; but whatever attorney's fees he is required to pay, he may not obtain any relief therefrom in the future. No motion was made for an attorney's fee, nor was any definite amount demanded for that purpose. Not a word of proof was heard upon the issue, and the only opposition to the amount allowed is found in brief of counsel who is the beneficiary thereof.

In urging the insufficiency of the allowance, counsel says in his brief: "The court will recall and remember Beckham Overstreet's standing in the community as a lawyer, his experience and ability for twenty-five years, his skill in the practice of law," etc. Further along, in emphasizing the same reason for the increased allowance, counsel says: "Here Beckham Overstreet, a lawyer of great prominence in the City of Louisville, resisted the divorce asked by the plaintiff in the lower court, and the appellee in this court, William C. Taylor, and defeated it and secured for his client all she asked for, a divorce a mensa et thoro. So the success of the defendant's attorney in the court below and the appellant in this court, was complete." Still later he urges the same reason for his contention by saying, "that the court in the exercise of a sound discretion should recognize a lawyer of ability who gives his time and attention to so worthy a case, should receive and have a fee of at least $300.00." If the prominence of counsel should govern the question instead of the amount of services rendered (and other elements to be considered) we might be authorized to enlarge the allowance, provided we could

treat the inserted statements from brief as evidence in the cause. However, we are not permitted to do so. But if it were otherwise, we then conclude that the allowance in this case, as based upon the facts furnished by the record, was ample and sufficient.

Wherefore, for the reasons stated, the judgment is reversed upon the amount of alimony allowed, with directions to modify it in accordance with this opinion, including the collection by proper process of past-due allowances to defendant; but it is affirmed as to the allowed attorney's fee.